# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| JERONE MCDOUGALD, Plaintiff, | Case No. 1:17-cv-124<br>Barrett, J.<br>Litkovitz, M.J. |
| vs. | |
| SHANNON BEAR, et al., Defendants. | **ORDER AND REPORT AND RECOMMENDATION** |

Plaintiff, an inmate at the Southern Ohio Correctional Facility ("SOCF"), brings this prisoner civil rights action under 42 U.S.C. § 1983 alleging that defendant Bear used excessive force against him and defendants Bear, Keating, Andre, Hart, and Reiter were deliberately indifferent to his medical needs. (Doc. 5). This matter is before the Court on plaintiff's motion for summary judgment (Doc. 35), defendants' motion for summary judgment and response in opposition to plaintiff's motion for summary judgment (Docs. 40, 42), and plaintiff's response in opposition to defendants' motion for summary judgment. (Doc. 46). This matter is also before the Court on plaintiff's motion for leave to amend or supplement his complaint. (Doc. 31).

## I. Procedural Background

Plaintiff filed his complaint in this matter on April 20, 2017, and this Court subsequently conducted a *sua sponte* review of the complaint. (Docs. 5, 6). This Court concluded by Report and Recommendation that plaintiff could proceed with his Eighth Amendment claims against defendants Bear, Keating, Andre, Hart, and Reiter based on his allegation that defendant Bear used excessive force against him and these defendants were deliberately indifferent to his medical needs. (Doc. 6 at 3-4). The Court dismissed plaintiff's claims against defendants in their official capacities for monetary damages. (*Id.* at 4). The Court also dismissed plaintiff's

Fourteenth Amendment claims against defendants Sammons, Felts, Green, and Mohr, and plaintiff's claim against defendant Bear for allegedly writing a false conduct report. The District Judge adopted the Report and Recommendation on May 22, 2017. (Doc. 9). On March 22, 2018, the District Judge denied plaintiff's motion for relief from judgment. (Doc. 29). Defendants filed a motion to dismiss on May 26, 2017. (Doc. 12). On November 7, 2017, the undersigned denied defendants' motion to dismiss plaintiff's Eighth Amendment claims for excessive force and deliberate indifference to medical needs. (Doc. 25). The District Judge adopted the Report and Recommendation on December 4, 2017. (Doc. 28).

## II. Motion for Leave Amend or Supplement Complaint (Doc. 31)

Plaintiff moves to amend his complaint to add penalty of perjury language pursuant to 28 U.S.C. § 1746. (Doc. 31 at 2).

The Federal Rules provide that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). "A district court has discretion in determining whether justice requires that [an] amendment be allowed." *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 522 (6th Cir. 1999) (citing *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)). For good cause shown, plaintiff's motion (Doc. 31) is **GRANTED**. Accordingly, plaintiff's verified amended complaint constitutes evidence in support of his own motion for summary judgment and in opposition to defendants' motion for summary judgment. "A verified complaint . . . satisfies the burden of the nonmovant to respond" to a motion for summary judgment, unlike "mere allegations or denials" in unverified pleadings. *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999) (en banc); *see also El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (a "verified complaint . . . carries the same weight as would an affidavit for purposes of summary judgment").

2

## III. Facts on Summary Judgment

Plaintiff states in his verified complaint that on December 16, 2015 at 2:50 P.M., defendant Bear escorted him back to his cell with his feet shackled and handcuffs off. (Verified Complaint, Doc. 5 at 1). Plaintiff alleges that defendant Bear sprayed him at close range in the face with a fogger can of pepper spray. (*Id.*). Plaintiff then stuck his arms out from the bars so the cameras "could see that [he] wasnt [sic] doing anything wrong." (*Id.*). Plaintiff alleges that he was escorted to the segregation unit in handcuffs where defendants Bear, Keating, and Andre denied him decontamination and defendants Hart, Bear, Keating, Andre, and Reiter denied him medical attention. (*Id.*). Plaintiff alleges that he had trouble breathing and defendants placed him in a cell that contained no water and a "piece of a [sic] inside of a mat." (*Id.* at 2). Plaintiff further alleges that defendants left him in handcuffs inside the cell and left him there to "suffer the mitigating effects of the pepper spray on [his] body and uniform." (*Id*). Attached to his motion for summary judgment, plaintiff has included a declaration, which generally iterates the same facts as his verified complaint, an incident report and inmate use of force statement from December 16, 2015, defendant Bear's answers to his first request for interrogatories, and a medical exam report from December 16, 2015. (Docs. 35-1, 35-2).

Defendants dispute plaintiff's version of events from December 16, 2015. Defendants present evidence that on December 16, 2015, plaintiff was escorted by defendant Bear to the Sergeant's office to have a ticket heard. (Use of Force Report, Doc. 40-1 at 1). Plaintiff refused to enter the Sergeant's office and stated to defendant Bear, "Fuck you bitch, I just wanted the walk!" (*Id.*; Bear Declaration, Doc. 40-3 at ¶ 11). Defendant Bear informed plaintiff that he would receive a ticket for lying and disrespect. (Use of Force Report, Doc. 40-1 at 1-2; Bear Declaration, Doc. 40-3 at ¶ 12). Plaintiff became verbally aggressive and threatened to "beat

3

[defendant Bear's] ass." (*Id.*). Once back at plaintiff's cell, defendant Bear ordered plaintiff to back up to the cell bars due to his aggressive behavior so that his handcuffs could be removed. (Use of Force Report, Doc. 40-1 at 1-2, Bear Declaration, Doc. 40-3 at ¶ 13). As defendant Bear removed one of plaintiff's handcuffs, plaintiff turned aggressively towards defendant Bear and made a hocking sound and attempted to spit on him. (Use of Force Report, Doc. 40-1 at 1-2; Bear Declaration, Doc. 40-3 at ¶ 14). Defendants have submitted video footage of the December 16, 2015 incident, which portrays defendant Bear escorting plaintiff back to his cell and shows that plaintiff also attempted to grab defendant Bear's left hand. (Doc. 45). Defendant Bear reacted by stepping back and deploying one burst of OC spray to plaintiff's face. (Use of Force Report, Doc. 40-1 at 1-2; Bear Declaration, Doc. 40-3 at ¶ 14; Video Footage, Doc. 45 at 14:45:28).

Plaintiff was escorted to the J2 unit and placed in security control. (Use of Force Report, Doc. 40-1 at 1-2). Ten minutes after being pepper sprayed, plaintiff was offered decontamination. (Use of Force Report, Doc. 40-1 at 10, 12). Defendants Bear, Keating, and Andre have never failed to offer decontamination to an inmate after being OC sprayed. (Bear Declaration, Doc. 40-3 at ¶ 18; Andre Declaration, Doc. 40-4 at ¶ 8; Keating Declaration, Doc. 40-5 at ¶ 9).

The same day at 3:05 P.M., plaintiff was evaluated by medical staff. (Use of Force Report, Doc. 40-1 at 3; Medical Exam Report, Doc. 40-1 at 20). Nurse Reiter and Nurse Hart arrived at plaintiff's cell front fifteen minutes after he had been sprayed. (*Id.*; Reiter Declaration, Doc. 40-7 at ¶¶ 3, 8; Hart Declaration, Doc. 40-6 at ¶¶ 3, 8). An objective evaluation by Nurse Reiter and Nurse Hart revealed that plaintiff's respirations were even and unlabored and he had no acute distress or injuries. (Reiter Declaration, Doc. 40-7 at ¶¶ 8, 10; Hart Declaration, Doc.

4

40-6 at ¶¶ 8, 11). Plaintiff did not appear to have any trouble breathing and did not relay to either nurse that he was having difficulty breathing. (Reiter Declaration, Doc. 40-7 at ¶ 8; Hart Declaration, Doc. 40-6 at ¶ 8). Nurses Reiter and Hart observed no visible irritation from the exposure to OC spray. (Reiter Declaration, Doc. 40-7 at ¶ 10; Hart Declaration, Doc. 40-6 at ¶ 11). Plaintiff refused to have his vital signs taken, including temperature, blood pressure, pulse, and oxygen saturation. (Medical Exam Report, Doc. 40-1 at 20; Reiter Declaration, Doc. 40-7 at ¶ 12; Hart Declaration, Doc. 40-6 at ¶ 13). Plaintiff was advised to flush with water any areas that came into contact with OC spray if irritation occurred, and to report any changes to the medical staff. (Medical Exam Report, Doc. 40-1 at 20). Inmates are not placed in cells without running water; therefore, plaintiff could have further flushed any areas that caused him continued irritation. (Bear Declaration, Doc. 40-3 at ¶ 20; Andre Declaration, Doc. 40-4 at ¶ 10; Keating Declaration, Doc. 40-5 at ¶ 11; Hart Declaration, Doc. 40-6 at ¶ 15). Attached to their motion for summary judgment, defendants have included incident reports, medical exam reports, and documents from the use of force investigation (Doc. 40-1), grievance documents (Doc. 40-2), declarations from defendants Bear, Andre, Keating, Hart, and Reiter (Docs. 40-3, 40-4, 40-5, 40-6, 40-7), and a declaration from William Cool, Deputy Warden of Operations, verifying the authenticity of the records (Doc. 40-8).

### IV. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and

5

admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[f]acts that are not blatantly contradicted by [the evidence] remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011). "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v.*

*Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp.2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter his duty to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp.2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

## V. Exhaustion of Administrative Remedies against defendants Hart and Reiter

Defendants argue that plaintiff has failed to exhaust his administrative remedies against Nurses Hart and Reiter. (Doc. 40 at 29-30). Defendants argue that plaintiff did not mention either nurse or details about their alleged wrongdoing in his informal complaint about the incident. (*Id.* at 30) (citing Doc. 40-2 at 5).

In response, plaintiff states that he named Nurse Hart and Nurse Reiter in his informal complaint, but listed Nurse Reiter as "Nurse Jane Doe" because he did not know her identity at the time he filed the informal complaint. (Doc. 46 at 7) (Plaintiff Exhibit F, Doc. 46 at 16).

Exhaustion of administrative remedies "is mandatory under the [Prison Litigation Reform Act ("PLRA")] and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "[A] prisoner confined in

7

any jail, prison, or other correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

"A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA.'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216). "[T]he failure to exhaust 'must be established by the defendants.'" *Id.* (quoting *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)). Thus, defendants bear the burden of proof on exhaustion. *Id.* Because defendants bear the burden of persuasion on exhaustion, their "initial summary judgement burden is 'higher in that [they] must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Id.* at 455-56 (quoting *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (in turn quoting 11 James William Moore et al., Moore's Federal Practice § 56.13[1], at 56-138 (3d ed. 2000))).

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion" of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "To properly exhaust a claim, prisoners must tak[e] advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90)). "Proper exhaustion [further] demands compliance with an agency's

8

deadlines. . . ." *Woodford*, 548 U.S. at 90. Proper exhaustion serves the necessary interest of providing "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)).

The procedure established for resolving inmate complaints in Ohio, codified in Ohio Admin. Code § 5120-9-31, involves a three-step process. First, the inmate is required to file an informal complaint with the direct supervisor of the staff member within fourteen days of the event giving rise to the complaint. Ohio Admin. Code § 5120-9-31(K)(1). Second, if the inmate is unsatisfied with the response to his informal complaint he may file a formal grievance with the inspector of institutional services at his institution of confinement. Ohio Admin. Code § 5120-9-31(K)(2). The inspector of institutional services is required to provide a written response to the inmate's grievance within fourteen calendar days of receipt of the grievance. *Id.* If the inmate is dissatisfied with the response, he may undertake the third step of the grievance process and file an appeal to the office of chief inspector of the ODRC within fourteen days of the disposition of the formal grievance. Ohio Admin. Code § 5120-9-31(K)(3).

Plaintiff has presented evidence creating a genuine dispute of material fact as to whether he exhausted his administrative remedies against Nurses Hart and Reiter. Defendants present evidence of an informal complaint submitted by plaintiff on December 21, 2015 and addressed to Mr. Oppy, the Institutional Inspector that does not mention either nurse. (Doc. 40-2 at 5). However, plaintiff presents evidence of the informal complaint and resolution, dated December 21, 2015 and addressed to Nurse Administrator Mrs. Warren. (Plaintiff Exhibit F, Doc. 46 at 16). Plaintiff's informal complaint mentions Nurse Hart and Jane Doe Nurse and alleges that

9

these nurses failed to render medical attention after the OC spray incident on December 16, 2015. (*Id.*). The evidence also shows that plaintiff filed a grievance and appeal to the Chief Inspector alleging he was denied medical attention by Nurse Hart and Jane Doe Nurse. (Doc. 40-2 at 1-4). Defendants Hart and Reiter have not met their burden of proof on failure to exhaust. Therefore, defendant Hart and Reiter's motions for summary judgment based on plaintiff's failure to exhaust his administrative remedies should be denied.

## VI. Eighth Amendment Excessive Force Claim

### A. Legal Standard

A convicted prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). An Eighth Amendment claim has both a subjective and an objective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). The "core judicial inquiry" on the subjective component is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Excessive force claims must focus "on the nature of the force rather than the extent of the injury. . . ." *Id.* at 34. In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the responsible official; and the extent of the injury inflicted. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 320-321. "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell*, 759 F.3d at 580-81 (citing *Wilkins*, 559 U.S. at 37). The absence of a serious injury is nonetheless relevant as a factor that suggests whether the

10

use of force may "plausibly have been thought necessary" in a given situation. *Id.* (quoting *Hudson*, 503 U.S. at 7).

The objective component requires the "pain inflicted to be 'sufficiently serious.'" *Cordell*, 759 F.3d at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). Analysis of this element of an Eighth Amendment claim "requires a contextual investigation, one that is responsive to contemporary standards of decency." *Id.* (citations and internal quotations omitted).

### B. Resolution

Plaintiff has failed to establish a genuine issue of fact on the subjective and objective components of his Eighth Amendment excessive use of force claim. The undisputed evidence shows that plaintiff was yelling and aggressive as defendant Bear escorted plaintiff back to his cell and attempted to remove plaintiff's handcuffs once they arrived at the cell door. While plaintiff states that he was doing nothing wrong, (Doc. 46 at 2), he has presented no evidence to dispute defendants' evidence that he was yelling obscenities, aggressively turned towards defendant Bear in an attempt to spit on him, and attempted to grab defendant Bear's hand as defendant Bear was in the process of removing plaintiff's handcuffs. In addition, the video evidence, while it contains no audio, nonetheless corroborates defendants' reports that plaintiff was yelling and agitated as defendant Bear escorted him to the cell and plaintiff turned and attempted to grab defendant Bear's hand as he was placed back inside his cell and being uncuffed. (Video Footage, Doc. 45 at 14:45:28-29). Plaintiff's version of events is blatantly contradicted by the video evidence such that no reasonable jury could believe it. *Scott*, 550 U.S. at 380. Further, plaintiff has presented no evidence to dispute he turned and spat at defendant Bear while Bear was attempting to remove plaintiff's handcuffs. In reaction to plaintiff turning

11

and attempting to spit and grab defendant Bear's hand, defendant Bear delivered a quick burst of pepper spray into plaintiff's face to gain control over plaintiff. The video shows that defendant Bear reacted by stepping back and deploying a short burst of OC spray. (*Id.*). Contrary to plaintiff's representation, a medical examination revealed that plaintiff was alert and oriented, had even and unlabored respirations, was in no acute distress, and sustained no injuries. (Doc. 40-1 at 20). The use of pepper spray by defendant Bear was in direct response to plaintiff's threatening behavior, including yelling and noncompliance with direct orders and turning and attempting to spit and grab defendant Bear's hand.

This evidence, coupled with the minor nature of plaintiff's injuries, indicates the use of force was "applied in a good-faith effort to maintain or restore discipline" and not maliciously or sadistically to cause harm. *Hudson*, 503 U.S. at 6-7. Corrections officers do not violate a prisoner's Eighth Amendment rights when they use force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004)). Deploying a short burst of pepper spray in response to an inmate who is disruptive, aggressive, and spitting at corrections officers is not disproportionate to the need to control an unruly inmate and does not satisfy the subjective component of an Eighth Amendment claim. *See Jennings*, 93 F. App'x at 725 ("The videotape squarely demonstrates that Jennings disobeyed repeated direct orders prior to the use of pepper spray."); *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases)); *Thompson v. Joseph*, No. 1:12-cv-992, 2014 WL 1685918, at *7 (S.D. Ohio Apr. 29, 2014) (Report and Recommendation) (Bowman, M.J.), *adopted*, 2014 WL 2172894 (S.D. Ohio May 23, 2014) (the defendant was entitled to qualified immunity because "no reasonable officer would have understood that it violated the Eighth Amendment to reactively aim chemical spray at Plaintiff in

12

his cell for less than two seconds (based on the videotape record), in order to force a threatening inmate to retreat and restore order.")); *Easley v. Little*, No. 1:14-cv-891, 2016 WL 4006676, at *7 (S.D. Ohio 2016) ("A short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey an order.").

In addition, plaintiff has failed to present evidence creating a genuine issue of fact on the objective element of his excessive use of force claim. No reasonable jury could conclude that the "pain inflicted" by defendant Bear was "sufficiently serious" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 585. "[W]here it is clear that some manner of threat by [an inmate] occasioned the briefest reactive use of pepper spray by a single prison guard, with no other force used by that guard or by anyone else, . . . the force used [i]s akin to a 'push or shove' that causes 'no discernible injury' and that falls short of what is required to state a valid Eighth Amendment claim." *Thompson*, 2014 WL 1685918, at *10. Plaintiff has failed to present medical evidence showing he experienced respiratory distress or that he had a medical condition making him particularly vulnerable to the use of pepper spray, as opposed to merely experiencing discomfort "in the ordinary fashion of persons exposed to pepper spray." *Jennings*, 93 F. App'x at 724.

Accordingly, because plaintiff has failed to submit any evidence creating a genuine issue of fact as to whether defendant Bear's use of force was reasonable under the circumstances, summary judgment should be granted in favor of defendant Bear on plaintiff's Eighth Amendment excessive force claim.

## VII. Eighth Amendment Denial of Medical Care Claim

### A. Legal Standard

To establish a violation of his Eighth Amendment rights resulting from a denial of medical care, a plaintiff must show that prison officials acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). A constitutional claim for denial of medical care has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001). The objective component requires the existence of a "sufficiently serious" medical need. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 834; *Estelle*, 429 U.S. at 104). A medical need is "sufficiently serious" if it either "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gunther v. Castineta*, 561 F. App'x 497, 499 (6th Cir. 2014) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)).

The subjective component requires an inmate to show that prison officials had "a sufficiently culpable state of mind" in denying medical care. *Farmer*, 511 U.S. at 834. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Gunther*, 561 F. App'x at 500 (quoting *Harrison*, 539 F.3d at 518). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). In sum, to prove the subjective component, the plaintiff must show that the official: (a) subjectively knew of a risk to the prisoner's health; (b) drew the inference that a substantial risk of harm to the prisoner existed; and (c) consciously disregarded that risk. *Farmer*, 511 U.S. at 837.

### B. Resolution

Defendants move for summary judgment on plaintiff's Eighth Amendment denial of medical care claim. (Doc. 40 at 23-27). Defendants state that plaintiff failed to state in his complaint that he was denied medical attention by Nurse Reiter and, therefore, summary judgment should be granted in her favor. (*Id.* at 24). Defendants state that the evidence establishes that defendants Bear, Keating, and Andre offered plaintiff decontamination after he was pepper sprayed, and plaintiff received medical attention from Nurses Reiter and Hart fifteen minutes after he was pepper sprayed. (*Id.* at 25-26).

In his motion for summary judgment and opposition to defendants' motion for summary judgment, plaintiff maintains that he was denied contamination and medical attention after he was pepper sprayed and that the medical examination report completed by the nurses was fabricated. (Docs. 35 at 4; 46 at 5-6).

In this case, the record demonstrates no genuine dispute of fact as to whether defendants were deliberately indifferent to plaintiff's medical needs after the December 16, 2015 pepper spray incident. As a matter of law, plaintiff's declarations do not establish that he suffered from a "sufficiently serious" medical need as required for an Eighth Amendment violation. Plaintiff has not shown that any medical diagnosis made him particularly vulnerable to chemical agent exposure, nor has he established a serious medical need beyond the normal effects associated with pepper spray exposure. *See McGuire v. Union Cty. Jail*, No. 4: 13-cv-P28, 2013 WL 4520282, at *5-6 (W.D. Ky. Aug. 26, 2013) (plaintiff failed to show how complaints of eye burning and runny nose after being pepper sprayed rose to the level of a "sufficiently serious" medical need); *Censke v. Unknown Ekdahl*, No. 2:08-cv-283, 2009 WL 1393320, at *8 (W.D. Mich. May 18, 2009) (plaintiff's complaints of "burning in his nose, lungs, eyes and skin . . . do

15

not constitute a serious medical need for purposes of the Eighth Amendment'); *Reeves v. Sweet*, No. 1:04-cv-605, 2005 WL 2417659, at *4 (W.D. Mich. Sept. 30, 2005) ("although [p]laintiff complains that he had breathing difficulties [after exposure to pepper spray], he has failed to present facts demonstrating that those difficulties were sufficiently different in degree or type from those experienced by others exposed to the spray, and he has asserted no adverse medical consequences from the exposure.").

Moreover, the evidence submitted by defendants overwhelmingly establishes that plaintiff received medical care after the incident and were not deliberately indifferent to plaintiff's medical needs. Plaintiff was offered decontamination ten minutes after being pepper sprayed. (Use of Force Report, Doc. 40-1 at 10, 12). Nurses Reiter and Hart arrived at plaintiff's cell front fifteen minutes after he was sprayed and completed a medical examination at 3:05 P.M. (Medical Exam Report, Doc. 40-1 at 20; Reiter Declaration, Doc. 40-7 at ¶¶ 3, 8; Hart Declaration, Doc. 40-6 at ¶¶ 3, 8). Objective physical findings during the medical examination revealed that plaintiff was alert and oriented, his respirations were even and unlabored, plaintiff was not in acute distress, and no injuries were observed. (Medical Exam Report, Doc. 40-1 at 20). Plaintiff did not appear to have any trouble breathing and did not relay to either nurse that he was having difficulty breathing. (Reiter Declaration, Doc. 40-7 at ¶ 8; Hart Declaration, Doc. 40-6 at ¶ 8). Nurses Reiter and Hart observed no visible irritation from the exposure to OC spray. (Reiter Declaration, Doc. 40-7 at ¶ 10; Hart Declaration, Doc. 40-6 at ¶ 11). Plaintiff refused to have his vital signs taken. (Medical Exam Report, Doc. 40-1 at 20; Reiter Declaration, Doc. 40-7 at ¶ 12; Hart Declaration, Doc. 40-6 at ¶ 13). The nurses advised plaintiff to flush areas that came into contact with the OC spray if irritation occurred and to report any changes in his condition to the medical staff. (Medical Exam Report, Doc. 40-1 at 20).

16

Plaintiff claims that he was denied contamination and medical attention and that the medical examination report was falsified by Nurses Reiter and Hart. (Docs. 35 at 4; 46 at 5-6). Plaintiff has failed to present evidence that these nurses falsified any medical records in connection with the December 16, 2015 incident. Plaintiff's allegations in this regard are speculative, which "does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995). Accordingly, because plaintiff has failed to establish a "sufficiently serious" medical need and that defendants were deliberately indifferent, summary judgment should be granted to defendants on plaintiff's Eighth Amendment denial of medical care claims.[1]

## VIII. Conclusion

Based on the foregoing, it is **RECOMMENDED** that:

1. Plaintiff's motion for summary judgment (Doc. 35) be **DENIED**.
2. Defendants' motion for summary judgment (Doc. 40) be **GRANTED**.[2]

It is **ORDERED** that:

---

[1] Defendants also argue that they are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The Court need not address whether defendants Bear, Keating, Andre, Hart, and Reiter are entitled to qualified immunity because the record shows there is no genuine dispute of material fact as to whether these defendants violated plaintiff's Eighth Amendment rights and therefore, as a matter of law, these defendants are entitled to summary judgment.

[2] Defendant Bear also moves for summary judgment on plaintiff's claim that he violated plaintiff's due process rights by making false allegations that led to plaintiff's segregation and plaintiff being housed in a behavioral modification unit for violating prison rules. (Doc. 40 at 27-28). However, the Court previously dismissed this claim on a *sua sponte* review of plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). (*See* Doc. 6 at 6-7, Doc. 9).

1. Plaintiff's motion to amend his complaint to add penalty of perjury language (Doc. 31) is **GRANTED**.

Date: 2/15/19

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JERONE MCDOUGALD,<br>Plaintiff,<br><br>vs.<br><br>SHANNON BEAR, et al.,<br>Defendants. | Case No: 1:17-cv-124<br>Barrett, J.<br>Litkovitz, M.J. |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).